IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **COSMETIC WARRIORS LIMITED**, | ) ) ) | Civil Action No. _____ |
| Plaintiff, | ) ) | |
| v. | ) ) | JURY TRIAL DEMANDED |
| **SCENTBIRD, INC.**, | ) ) | |
| Defendant. | ) ) ) ) | |

## COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES

Plaintiff Cosmetic Warriors Limited for its complaint against Defendant Scentbird, Inc., alleges as follows:

## THE PARTIES

1.      Plaintiff Cosmetics Warriors Limited ("Cosmetic Warriors") is a company organized and existing under the laws of the United Kingdom, with its principal place of business at Suite 4, Strata House, 12-14 Castle Street, Poole, Dorset, BH15 1BQ in the United Kingdom. Plaintiff has extensive operations in the United States, including over 200 LUSH branded retail stores and websites at www.lush.com and www.lushusa.com.

2.      Upon information and belief, Defendant Scentbird, Inc. ("Scentbird") is a Delaware corporation with its principal place of business in this District at 10 West 33rd Street, # 1011, New York, New York 10001.

<u>**NATURE OF ACTION AND JURISDICTION**</u>

3.      This is an action for trademark infringement, unfair competition, and deceptive trade practices brought pursuant to Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), New York General Business Law § 349, and the common law of the State of New York.

4.      This Court has jurisdiction over this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Title 28 of the United States Code, §§ 1331 and 1338, and supplemental jurisdiction over Cosmetic Warriors' claims under state law under 28 U.S.C. § 1367(a). This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the United Kingdom and a citizen of the State of Delaware.

5.      This Court has personal jurisdiction over Scentbird because Scentbird's principle place of business is located within this District. Moreover, Scentbird purposefully targets and otherwise solicits business from New York State residents through its website and sells products to customers located within this District. Scentbird has also been and is still committing the acts alleged herein in this District and has been causing injury by creating consumer confusion within this District. A substantial part of the acts and omissions giving rise to Cosmetic Warriors' claims have occurred and continued to occur in this District.

6.      Venue is proper in this district under 28 U.S.C. § 1391.

<u>**FACTS**</u>

**A.   Cosmetic Warriors and Its LUSH Brand:**

7.      Cosmetic Warriors owns the globally renowned LUSH cosmetics brand, one of the world's premier suppliers of bath, hair care, skin care, and beauty products made from natural,

wholesome ingredients. Through Cosmetic Warriors' authorized licensees, LUSH branded products are sold from over 200 retail shops operated in the United States, with at least 8 shops in the State of New York, including shops within this District located in Manhattan on the Upper West Side, East 86th Street, Columbus Circle Station, Lexington Avenue, Herald Square, and Union Square. Cosmetic Warriors' LUSH branded products and services are also sold and provided from retail shops in many foreign countries, as well as via print catalogs and Internet web sites (including www.lush.com and www.lushusa.com). The LUSH brand has a reputation of providing competitively priced, high-quality bath, hair care, and beauty products and services. Over the last several years, Cosmetic Warriors and its licensees have substantially grown the LUSH brand's business in the United States, making it one of the nation's best known retail providers of bath, hair care, skin care, and beauty products and services.

8.    Through its licensees, Cosmetic Warriors has been commercially using the LUSH and LUSH FRESH HANDMADE COSMETICS marks in the United States since at least as early as 1995 through mail order, telephone, Internet, and catalog sales throughout the United States, and has used its LUSH and LUSH FRESH HANDMADE COSMETICS and Design marks from its own retail locations in the United States since at least 2002. The LUSH trademarks are used in connection with cosmetic preparations and affiliated products in the nature of skin creams and moisturizers, perfumes, bath preparations, hair products in the nature of skin creams and moisturizers, perfumes, bath preparations, lip products, hair products (including shampoos, conditioners, hair treatments, hair dyes, and styling gels), and retail store services, including consultations and providing recommendations to customers. Representative photographs of Cosmetic Warriors' LUSH branded products are shown below:



9.      Through its licensees, Cosmetic Warriors operates stores within many major regional shopping malls, such as the Fashion Square Mall in Scottsdale, Arizona, and the Mall of America in Bloomington, Minnesota, to name just a few examples. Cosmetic Warriors also operates retail shops in major shopping districts, such as near Union Square in San Francisco, California and on Lexington Avenue in New York City. A representative photograph of one LUSH branded retail shop in the United States is shown below:



10.     Cosmetic Warriors owns, among others, the following United States Trademark Registrations and Application for the LUSH mark:

| MARK | REG. NO. | REGISTRATION DATE |
|---|---|---|
| | **GOODS & SERVICES** | |
| **LUSH** | 2,282,428 | October 5, 1999 |
| | perfumes; nonmedicated toilet and cosmetic preparations, namely, lotions, powders and creams for use on the skin, dentifrices, cosmetic | |

| | | |
|---|---|---|
| | depilatory creams, personal deodorants, preparations for the care of the hair, shampoos, soaps, and essential oils for personal use, in International Class 3 | |
| **LUSH** | 2,853,483 | June 15, 2004 |
| | bringing together, for the benefit of others, of a variety of goods enabling customers to conveniently view and purchase those goods in a retail cosmetics and toiletries store; the bringing together, for the benefit of others, of a variety of goods, enabling customers to conveniently view and purchase those goods from a mail order catalogue, or from an Internet web site, specializing in the marketing of cosmetics and toiletries, in International Class 35 | |
| **LUSH** | 3,001,303 | September 27, 2005 |
| | catalogues listing and illustrating cosmetics and toiletry products; printed product lists featuring cosmetic products and toiletry products; printed point of sales display in the nature of signs and display boards; and paper bags, in International Class 16 | |
| **LUSH** | 3,008,685 | October 25, 2005 |
| | perfumes; nonmedicated toilet and cosmetic preparations, namely lotions, powders and creams for use on the skin; preparations for cleansing and care of the skin; bath oils in solid and liquid form; personal deodorants; hair care preparations; oil based massage bars that melt on contact with the skin; solid skin moisturizers and skin conditioners in the form of a paste or face mask; bath bars that melt on contact with hot water to produce a soapy or oily suspension; soaps; and essential oils for personal use, in International Class 3 | |
| **LUSH FRESH HANDMADE COSMETICS and Design**  | 3,102,767 | June 13, 2006 |
| | perfumes; non-medicated toilet and cosmetic preparations, namely lotions, powders and creams for use on the skin; preparations for cleansing and care of the skin; bath oils in solid and liquid form; personal deodorants; hair care preparations; oil based massage bars that melt on contact with the skin; solid moisturizers and skin conditioners in the form of a paste or face mask; bath bars that melt on contact with hot water to produce a soapy or oily suspension; soaps; and essential oils for personal use, in International Class 3 | |
| **LUSH** | 3,987,808 | July 5, 2011 |
| | hair salon services, namely, hair styling, coloring, washing, shampooing, conditioning, applying hair masks, head massages, and | |

|  | | |
|---|---|---|
|  | scalp massages; beauty salon therapy services, namely, cleansing of the skin, applying face masks, applying back pack masks, skin peelers, steam treatments, toning, shaving, exfoliation treatments, treatments using creams and lotions against problem skin or older skin, and facial and body treatments consisting of a combination of creams/lotions and massage; beauty salon services; aromatherapy services; skin care salon services; massage services; nail care and manicure services; trichology services, namely, providing advice and consultancy relating to hair disorders in the nature of greasy hair, lank hair, dry hair, dandruff and split hairs; counseling, advisory and information services in the field of beauty and cosmetics, and providing information about beauty by way of beauty demonstrations, in International Class 44 | |
| **LUSH** | 4,118,438 | March 27, 2012 |
| | cosmetics in International Class 3 | |
| **LUSH TIMES** | 4,532,289 | May 20, 2014 |
| | publications, namely, a magazine featuring cosmetics, hair care, skincare, culture, current events, humanitarianism, animal welfare and the environment in International Class 16 | |
| **LUSH** | 86/475,096 | N/A |
| | clothing, namely T-shirts, tank tops, hooded sweatshirts, aprons, knit caps, scarves, boxer shorts and panties | |

A copy of each of these registrations and application is attached as **Exhibits A – I**. Each of the registrations shown in Exhibits A – H are valid and subsisting, and are *prima facie* or conclusive evidence of Cosmetic Warriors' exclusive right to use said marks in commerce on the goods and services specified in each registration. Further, each of the registrations shown in Exhibits A – G are incontestable.

11.    Through its licensees, Cosmetic Warriors has naturally and systematically expanded both the geographic footprint for the distribution of its goods and services and its product line since 1995. For instance, Cosmetic Warriors has expanded use of its LUSH mark to magazines, tote bags, clothing, and other goods beyond cosmetics and bath products.

6

12.     Cosmetic Warriors and its licensees have expended a substantial amount of money and effort in advertising and promoting the LUSH mark. LUSH is among the most innovative and creative brands of cosmetics, soaps, hair products, bath products, perfumes, and related products and services in the world today. Those products and services are frequently imitated. Cosmetic Warriors and its LUSH mark are well known and consumers have come to know, rely upon, and recognize the LUSH mark as identifying Cosmetic Warriors' and its licensees' products and retail stores.  Indeed, LUSH is the corporate persona and identity of Cosmetic Warriors in the minds of consumers. As a result of substantial promotional, advertising, publicity, and public relations activities, the LUSH mark has acquired substantial goodwill and is an extremely valuable commercial asset.

13.     Cosmetic Warriors LUSH mark is inherently distinctive, serving to identify and indicate the source of Cosmetic Warriors' products to the consuming public, and to distinguish Cosmetic Warriors' products and services from those of others.

14.     Cosmetic Warriors also has common-law rights in the LUSH mark throughout the United States.

15.     Since its inception, Cosmetic Warriors has had an express intent to use and expand its line of LUSH branded products and services.  This specific intent to expand includes geographic expansion and development of new and additional products, which started in at least 1995 and continues to this day.

16.     Cosmetic Warriors regularly enforces its trademark rights against unauthorized third party users by sending letters, filing opposition and cancellation actions before the United States Patent and Trademark Offices' Trademark Trial and Appeal Board, and when necessary

filing lawsuits in district courts. Through these efforts, Cosmetic Warriors has successfully maintained the commercial strength of its LUSH mark in and throughout the United States.

**B.   Scentbird and Its Products**

17.     On information and belief, Scentbird was formed in or about 2014, and began offering subscription fragrance plans whereby subscribers would receive monthly shipments of designer cologne and perfume. Some of the third-party designer fragrance brands promoted on Scentbird's website include DOLCE & GABANNA, VERSACE, GUCCI, BURBERRY, DKNY, CALVIN KLEIN, CLINIQUE, and ESTEE LAUDER, among others.

18.     Scentbird recently began to include makeup "from top beauty brands" in its subscription mail order products and services. Some of the third-party makeup brands featured on Scentbird's website include AMAZINGCOSMETICS, ARDENCY INN, DECK OF SCARLET, KAT VON D, MALLY BEAUTY, TARTE, TRESTIQUE, and WANDER BEAUTY.

19.     Scentbird has also recently started to offer its own private label makeup and beauty products. Scentbird's private label products include scented candles, lip balm, hand cream, shower scrub, conditioning wash, moisturizer, and body polish – many of which are promoted and sold in white packaging bearing the SCENTBIRD mark.

**C.   Scentbird's Unlawful Conduct**

20.     Scentbird, with constructive and, upon information and belief, actual knowledge of Cosmetic Warriors' LUSH trademark rights, began making, offering for sale, selling, promoting, and advertising a private label line of skin care, lip, and beauty products under the confusingly similar mark LUSH GOLD.

21.     Cosmetic Warriors first learned of Scentbird and its use of the LUSH GOLD mark in early October 2018, through a media alert of an article entitled "Fragrance subscription service

Scentbird to launch bath and body capsule collection" at the website https://www.glossy.co/beauty/fragrance-subscription-service-scentbird-to-launch-bath-and-body-capsule-collection. The article announced Scentbird's release of three products – a body wash, a body oil, and a lip oil – under the LUSH GOLD mark.

22.     Cosmetic Warriors reviewed Scentbird's website at www.scentbird.com in early October 2018, but did not find the LUSH GOLD products advertised or offered for sale. With the understanding then that Scentbird had not yet released its LUSH GOLD product line, Cosmetic Warriors wrote to Scentbird, stating it owned federal registrations for the LUSH trademark, explaining why the use of the LUSH GOLD mark by Scentbird would create a likelihood of consumer confusion, and requesting that Scentbird choose a different mark before releasing the product line. A true and correct copy of that letter dated October 15, 2018, is attached hereto as **Exhibit J**.

23.     Scentbird did not respond to Cosmetic Warriors' October 2018 letter.

24.     In or about early November 2018, Cosmetic Warriors again reviewed Scentbird's website and observed that LUSH GOLD products were then being advertised and offered for sale. Scentbird continues to advertise and offer for sale the same LUSH GOLD products on its website today. Below are images of the three products included in Scentbird's LUSH GOLD line:



(Image taken from www.scentbird.com/scentbird-products on January 16, 2019.)

25.     On or about November 7, 2018, Cosmetic Warriors sent a follow-up letter to Scentbird, this time copying its attorney of record identified in Scentbird's trademark application filings at the USPTO. A true and correct copy of the November 2018 follow-up letter is attached hereto as **Exhibit K**.

26.     Since sending the follow-up letter in November 2018, Cosmetic Warriors' counsel has communicated with Scentbird's counsel on numerous occasions in an effort to resolve this dispute. Scentbird has taken the position that it is not using LUSH GOLD as a trademark and, even if it is, that its use does not create a likelihood of confusion vis-à-vis Cosmetic Warriors' LUSH mark. It has refused Cosmetic Warriors' requests to cease use of the LUSH mark within a commercially reasonable timeframe.

27.     Despite Cosmetic Warriors' repeated notices that Scentbird was and is not authorized to use the LUSH mark (or confusingly similar derivations of the same, including LUSH GOLD) and its repeated requests for Scentbird to agree to rebrand its product line in an appropriate

timeframe, Scentbird continues to make, offer for sale, sell, promote, and advertise skin care, lip, and beauty products under the confusingly similar LUSH GOLD mark.

28.     By virtue of the aforementioned correspondence from Cosmetic Warriors, Scentbird is aware of the vast and valuable goodwill and reputation represented and symbolized by Cosmetic Warriors' LUSH mark. Scentbird is also aware that consumers and potential customers rely on Cosmetic Warriors' LUSH mark as distinguishing Cosmetic Warriors' products and services from those of others.

29.     As a result of the same aforementioned correspondence, Scentbird has had actual notice of Cosmetic Warriors' federal registration of and superior rights in and to the LUSH mark as well as its objection to Scentbird's use of the LUSH GOLD mark no later than October 15, 2018. Since then, Scentbird has taken no steps to cease its infringing conduct and, in fact, moved forward with its launch of the LUSH GOLD product line despite Cosmetic Warriors' notice of its superior trademark rights in the LUSH mark.

30.     Scentbird's use of the LUSH mark and derivatives of the same has always been and continues to be without the permission, consent, or authority of Cosmetic Warriors.

**D.  Effect of Scentbird's Conduct on Cosmetic Warriors and the Consuming Public**

31.     Scentbird is using the LUSH GOLD mark as a trademark to indicate the origin of one of its private label beauty and skincare lines. As shown in the photographs above, the LUSH GOLD mark is the most visible and prominent aspect of its product packaging.

32.     Scentbird's LUSH GOLD mark is confusingly similar to Cosmetic Warriors' LUSH mark. Cosmetic Warriors' LUSH mark is reproduced entirely within Scentbird's LUSH GOLD mark. In fact, the leading and dominant element of Scentbird's mark is the term LUSH. Thus, the parties' marks are similar in sight, sound, and meaning.

11

33.     Both Cosmetic Warriors LUSH mark and Scentbird's LUSH GOLD mark are prominently displayed on product packaging in all capitalized block letters and a sans-serif font. They are both emphasized to stand out among the other text and design aspects of the parties' respective packaging. Thus, the parties' marks both evoke substantially the same commercial impression in the market.

34.     Scentbird's products promoted and sold under the LUSH GOLD mark are of the same type as and compete against those of Cosmetic Warriors sold under the LUSH mark. The parties' respective goods directly overlap and are legally identical. Normal consumers would expect the parties' respective skincare and beauty products to be produced by the same source.

35.     Scentbird promotes and sells its LUSH GOLD products over the Internet, including on its website at www.scentbird.com and via social media sites such as Facebook, Twitter, and Instagram. On information and belief, Scentbird promotes and sells its LUSH GOLD products to all classes of consumers, but has particular success with female consumers between the ages of 15 – 35. Likewise, Cosmetic Warriors' LUSH branded products are promoted and sold over the Internet on its websites at www.lush.com and www.lushusa.com, as well as Facebook, Twitter, and Instagram. Moreover, LUSH branded products are sold to all classes of consumers, including female consumers between the ages of 15 – 35. Thus, the channels of trade and promotion utilized by the parties directly overlap, as do the classes of consumers targeted by their respective products under the LUSH and LUSH GOLD marks.

36.     Scentbird's LUSH GOLD products are being promoted and sold throughout the same geographic markets as Cosmetic Warriors' LUSH products – namely, the entire United States.

12

37.    Scentbird's unauthorized use of the LUSH mark and derivatives is likely to cause confusion or mistake or to deceive consumers into believing that Scentbird's unauthorized products and services advertised, promoted, and offered under the LUSH GOLD mark are sponsored, licensed or authorized by, or are affiliated, connected, or otherwise associated with Cosmetic Warriors when they are not.

38.    The likelihood of confusion created by Scentbird's use of the confusingly similar LUSH GOLD mark is exacerbated by Scentbird's business model. Scentbird's primary business has been and, on information and belief, continues to be a subscription service whereby subscribing customers receive monthly shipments of "designer fragrances" and "makeup from top beauty brands." A Scentbird customer accustomed to receiving third-party branded beauty and fragrance products from Scentbird would naturally expect products bearing the LUSH mark and offered by Scentbird to be associated with Cosmetic Warriors' globally renowned LUSH brand. Hence, the risk of confusion here vis-à-vis the parties' uses of the LUSH mark is especially acute.

39.    On information and belief, Scentbird is deriving and will continue to derive substantial revenue from its products and services provided under the LUSH GOLD mark.

40.    The continued use by Scentbird of the LUSH GOLD mark on its website, in its advertising and promotional materials, and on its products and packaging is likely to diminish the goodwill associated with Cosmetic Warriors' LUSH brand and trademark.

41.    Recent product reviews posted on Scentbird's website suggest its customers are not fully satisfied with its LUSH GOLD products. Reproduced below are representative customer reviews of Scentbird's LUSH GOLD Shimmering Lip Oil:

- tatiana on 12/18/2018:  Not impressed / Its very beautiful on the outside but the lip oul itself is blah feels like slippery then dries after like 5 mins n my lips fee dry n if u click too much u waste oil . . . .

- Stacy on 12/19/2018:  Not to good Gold lip oil / The bottle is very cute and unique I think I enjoyed how it looked more than the actual item. Very thin to lips not last long. Not for winter that's for sure.

- LaFawn on 12/27/2018:  It's ok / The product is OK to give moisture for a short timeframe, but it doesn't last.

- Melanie on 12/30/2018:  It's ok / I really like using this product, however, it's seems difficult to get the lip oil out.

- susan on 1/14/2019:  Wanted to love this / This is definitely not your 'go-to' favorite lip balm/oil that you can't live without winter, spring, summer OR fall! So id you're buying it hoping for that, you might be disappointed. IMO, the oil is thin, it doesn't last long and the taste/flavor is unappealing! BUT …this is now my go to lip balm/oil when out on the town or on a date. The packaging is elegant and it does leave a very soft, ephemeral shimmer on your lips for a short amount of time. Really on the fence on this one! :/

42.     The Better Business Bureau® has given Scentbird an "F" rating, with a total of 109 customer reviews averaging to just one star out of five, and with over 500 customer complaints in the last year, alone. (*See* www.bbb.org/us/ny/new-york/profile/online-retailer/scentbird-inc-0121-165579.)

43.     Based on the likelihood of confusion created by Scentbird's unauthorized use of the confusingly similar LUSH GOLD mark, there is a very real risk that dissatisfied customers will impute their dissatisfaction onto Cosmetic Warriors' LUSH brand and products.

44.     Scentbird's continued use of the LUSH mark and derivatives is with full knowledge of the prior ownership by Cosmetic Warriors, of Cosmetic Warriors' LUSH mark and of Cosmetic Warriors' rights to use and control the use of such mark.

45.     Scentbird has acted and continues to act without regard to Cosmetic Warriors' property rights and goodwill.

46.     As a result of Scentbird's unauthorized use of the LUSH mark and derivatives, Scentbird is being unjustly enriched at Cosmetic Warriors' expense, and Cosmetic Warriors is being damaged.

47.     Scentbird's unauthorized use of the LUSH mark and derivatives has significantly injured Cosmetic Warriors' interests. Specifically, Scentbird (a) has traded upon and threatens to further trade upon the significant and valuable goodwill in Cosmetic Warriors' LUSH mark; (b) is likely to cause public confusion as to the source, sponsorship, or affiliation of Scentbird's products or services vis-à-vis Cosmetic Warriors and its LUSH brand; (c) has damaged and threatens to further damage Cosmetic Warriors' significant and valuable goodwill in its LUSH mark; (d) has injured and threatens to further injure Cosmetic Warriors' right to use its LUSH mark as the exclusive indicia of origin of Cosmetic Warriors' bath, hair, and beauty products and services in New York and throughout the United States; (e) has lessened the capacity of Cosmetic Warriors' LUSH mark to indicate that its products originate from Cosmetic Warriors; and (f) has engaged in unlawful, unfair, and fraudulent business practices from which members of the public are likely to be deceived as to the source, sponsorship, or endorsement of Scentbird's goods.

48.     Scentbird's continued use of the LUSH mark and derivatives will continue to confuse consumers, erode the goodwill of the LUSH brand and mark, and harm the business and commercial reputation of Cosmetic Warriors.

49.     Unless these infringing acts by Scentbird are restrained by this Court, they will cause irreparable injury to Cosmetic Warriors and to the public, for which there is no adequate remedy at law.

**E.   Willful Nature of Scentbird's Infringement and Unfair Competition**

50.     Scentbird's acts of infringement and unfair competition complained of herein have been deliberate, willful, intentional, and in bad faith and, since at least October 15, 2018, undertaken with full knowledge and in conscious disregard of Cosmetic Warriors' intellectual property rights. The alleged excuses, justifications, and other attempts to hide and obfuscate the

facts of this matter undertaken by Scentbird have been dilatory, disingenuous, and without a sound

basis in fact or applicable law. In view of the egregious nature of Scentbird's actions, this is an

exceptional case as described in Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement Under 15 U.S.C. § 1114

51.     Cosmetic Warriors repeats and re-alleges by reference the allegations in Paragraphs

1-50, above, as if fully set forth herein.

52.     The acts of Scentbird complained of herein are likely to cause confusion, mistake,

or deception as to origin, sponsorship, approval, or affiliation as between Scentbird and its LUSH

GOLD products on the one hand, and Cosmetic Warriors and its LUSH brand and products, on the

other. Scentbird's conduct therefore constitutes federal trademark infringement in violation of 15

U.S.C. § 1114(1).

53.     As a direct and proximate result of Scentbird's infringement, Cosmetic Warriors

has been, is now, and – unless Scentbird is enjoined by the Court – will continue to be irreparably

harmed and damaged for which Cosmetic Warriors has no adequate remedy at law.

54.     By reason of Scentbird's bad faith and willful infringement, Cosmetic Warriors is

entitled to recover actual damages, treble damages, an accounting for Scentbird's infringing

profits, attorney fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117, as well as

injunctive relief pursuant to 15 U.S.C. § 1116.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition Under 15 U.S.C. § 1125(a)

55.     Cosmetic Warriors repeats and re-alleges by reference the allegations in Paragraphs

1-54, above, as if fully set forth herein.

56.     The acts of Scentbird complained of herein are likely to cause confusion, mistake,

or deception as to origin, sponsorship, approval, or affiliation as between Scentbird and its LUSH

16

GOLD products, on the one hand, and Cosmetic Warriors and its LUSH brand and products on the other. Scentbird's conduct therefore constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

57.     As a direct and proximate result of Scentbird's unfair competition, Cosmetic Warriors has been, is now, and – unless Scentbird is enjoined by the Court – will continue to be irreparably harmed and damaged for which Cosmetic Warriors has no adequate remedy at law.

58.     By reason of Scentbird's bad faith and willful unfair competition, Cosmetic Warriors is entitled to recover actual damages, treble damages, an accounting for Scentbird's infringing profits, attorney fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117, as well as injunctive relief pursuant to 15 U.S.C. § 1116.

**THIRD CLAIM FOR RELIEF**
**Deceptive Trade Practices Under New York General Business Law § 349**

59.     Cosmetic Warriors repeats and re-alleges by reference the allegations in Paragraphs 1-58, above, as if fully set forth herein.

60.     The acts of Scentbird complained of herein constitute deceptive trade practices under New York General Business Law § 349, at least because Scentbird's conduct with respect to its LUSH GOLD products is consumer-oriented and materially misleading insofar as its LUSH GOLD products are materially different than Cosmetic Warriors' LUSH branded products, and Scentbird's promotion, offer to sell, and sale of its LUSH GOLD products has caused and will cause confusion or deception among consumers in New York and to the public interest.

61.     As a direct and proximate result of Scentbird's deceptive trade practices, Cosmetic Warriors has been, is now, and – unless Scentbird is enjoined by the Court – will continue to be irreparably harmed and damaged for which Cosmetic Warriors has no adequate remedy at law. Moreover, Scentbird's conduct has resulted in Cosmetic Warriors' further loss of money or

property, such as, for example, diminished goodwill in its LUSH mark and, on information and belief, lost sales due to the same.

62.     As a direct and proximate result of Scentbird's deceptive trade practices, consumers and public at large have been, are now, and – unless Scentbird is enjoined by the Court – will continue to experience confusion over Scentbird's use of the LUSH GOLD mark.

63.     Cosmetic Warriors is entitled to actual and enhanced damages as well as injunctive relief.

**FOURTH CLAIM FOR RELIEF**
**Trademark Infringement and Unfair Competition Under New York Common Law**

64.     Cosmetic Warriors repeats and re-alleges by reference the allegations in Paragraphs 1-63, above, as if fully set forth herein.

65.     The acts of Scentbird complained of herein have been in bad faith and are likely to cause confusion, mistake, or deception as to origin, sponsorship, approval, or affiliation as between Scentbird and its LUSH GOLD products on the one hand, and Cosmetic Warriors and its LUSH brand and products on the other. Scentbird's conduct therefore constitutes trademark infringement and unfair competition under the common law of the State of New York.

66.     As a direct and proximate result of Scentbird's infringement and unfair competition, Cosmetic Warriors has been, is now, and – unless Scentbird is enjoined by the Court – will continue to be irreparably harmed and damaged for which Cosmetic Warriors has no adequate remedy at law.

67.     Cosmetic Warriors is entitled to actual and enhanced damages as well as injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Cosmetic Warriors prays that:

A.      Scentbird, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be preliminarily and permanently enjoined from using the LUSH and/or LUSH GOLD marks, and any other mark that is confusingly similar to the LUSH mark;

B.      Scentbird, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to modify all packaging and promotional materials to eliminate the LUSH and/or LUSH GOLD marks, and any other mark that is confusingly similar to the LUSH mark;

C.      Scentbird, its officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with any of them, be required to deliver to the Court for destruction, or show proof of destruction of, any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements, and any other physical materials in Scentbird's possession or control that use the LUSH and/or LUSH GOLD marks, and any other mark that is confusingly similar to the LUSH mark;

D.      Scentbird be ordered to file with this Court and to serve upon Cosmetic Warriors within 30 days after the entry and service on Scentbird of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Scentbird has complied with the injunction;

E.      Cosmetic Warriors recover all damages it sustains as a result of Scentbird's infringement and unfair competition, and that said damages be trebled;

F.      The Court direct an accounting to determine Scentbird's profits resulting from its activities complained of herein, and that such profits be paid over to Cosmetic Warriors, increased as the Court finds to be just and proper under the circumstances of this case;

G.      Cosmetic Warriors recover statutory damages as provided for in 15 U.S.C. § 1117(d);

H.      Scentbird be directed to pay enhanced damages;

I.      Cosmetic Warriors recover its reasonable attorney fees;

J.      Cosmetic Warriors recover its costs of this action and prejudgment and post judgment interest;

K.      Pre- and post-judgment interest in the highest amount allowable by law.

L.      Cosmetic Warriors recover such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Under Fed. R. Civ. P. 38(b), Cosmetic Warriors hereby demands a trial by jury on all issues triable as of right by a jury.

Dated:    February 6, 2019                 By: /s/ Peter A. Gergely
                                           Peter A. Gergely (*pro hac vice* pending)
                                           Merchant & Gould P.C.
                                           767 3rd Ave, 23rd Floor
                                           New York, NY 10017
                                           Ph. (212) 223-6520
                                           pgergely@merchantgould.com

                                           Heather Kliebenstein (*pro hac vice* to be filed)
                                           Merchant & Gould P.C.
                                           3200 IDS Center
                                           80 South 8th Street
                                           Minneapolis, MN 55302-2215
                                           Ph. (612) 332-5300
                                           hkliebenstein@merchantgould.com

20

Ian McFarland (*pro hac vice* to be filed)
Merchant & Gould P.C
9717 Cogdill Road
Knoxville, TN 37932-3322
Ph. (865) 380-5960
imcfarland@merchantgould.com
ATTORNEYS FOR PLAINTIFF